Drummond, G. J.
The case of Moyer et al. v. Adams was a bill filed in the district court by the assignee of Stoner & Moyer to set aside conveyances made on the twenty-fourth of November, 1877, by Moyer to Stephen G. Shank, and by Shank to the wife of Moyer, on the ground they were fraudulent as against creditors. Stoner & Moyer were adjudicated bankrupts on their own petition on May 18, 1878.
It does not clearly appear, by the evidence submitted to the court in this case, at what time Moyer became the owner of the property covered by the conveyance. The inference is that it was not later than 1869 Moyer bought the land with his own money and property. He had sold some real estate belonging to him many years before the bankruptcy, when he was comparatively free from debts, and made a present to his wife out of the proceeds of the sale of the sum of $500, and she took possession of the money and retained it, as she says, about a year. Then Moyer wanted it, and she gave it to him for the purpose of being used in the construction of the house placed on the property, and in which they lived; this must have been as early as 1869. When she gave her husband the money no note or other evidence of the debt was executed to her. There was no agreement about paying any interest. When needing the money, he asked for it to use in building, and she voluntarily gave it to him for that purpose. He says that the deed was made to her to secure her *183 the $500; that she had insisted upon it before that time, but that he had neglected to have the deed executed. Shank was made use of simply as the channel through which the property was conveyed to the wife by the husband. The house cost between $1,200 and $1,500. The husband says that when he got the money from the wife he was to pay it back to her. Moyer always paid the taxes on the property and the insurance, and seems to have treated it as his own prior to the conveyance made to his wife. The language used by Moyer is as follows: “When I got it (the money) from her I was to pay her back; there was no time set; I just said I would pay her back; no note was given or anything put in writing about it; I never put down in any book that I owed her $500.” The property in controversy was worth $2,500 to $3,000.
The case of Stoner et al. v. Adams, was also a bill filed in the district court by the assignee of Stoner & Moyer to set aside a conveyance made November 6, 1877. The facts that give rise to the controversy in this case are these:
Stoner and his wife were married in January 1859, and the wife, about 1868, received from her father’s estate the sum of $600. With this money the lot in controversy was purchased, and the deed taken in the name of the husband, July lé, 1868. Stoner built a house on the lot about three years after it was purchased, for which he paid $1,500 of his own money. This property, when the deed was made to her, was worth about $2,500 or $3,000. He had always paid the taxes on the property, and he resided in the house as his own. He had instructed a real estate agent to offer the house for sale at one time, in consequence of which he became liable to him for a commission, which he did not pay, and for which he was sued, and a judgment obtained against him, which he subsequently paid. No writings passed between the husband and wife in relation to the $600 with which the lot had been purchased. No note was ever given by the husband for the amount, and no agreement was made to pay any interest. It is said by both that the intention was that the property should be conveyed to the wife at the *184 time of the purchase, which, however, was never done until November 6, 1877, as already stated. The wife says that when the deed was made to her she paid him $20 in money that she had made herself since her marriage. A mortgage had been made on the house and lot for $1,000, which had been borrowed by the husband for the purpose of building the house. They both executed the mortgage. She says for years she had insisted that the property should be placed in her own name before it was done, but that he had put it off from time to time. She says, also, she did not know, at the time, that the deed was made to him, although, of course, she must have ascertained the fact shortly afterwards. The husband had never paid her the $600, or any interest on it.
These two cases were argued as one, and, as they relate to the property of two partners engaged together in trade, who became bankrupts, and, as the facts are somewhat similar, and the same principles are involved in each case, they will be considered together.
Several cases have been cited by the appellant’s counsel in support of the deeds made to the wife, but they do not seem to go to the full extent necessary in these cases. In Parton v. Yates, 41 Ind. 456, the supreme court of this state sustained a deed made by the husband to the wife, where the property had been conveyed to the husband, and the whole consideration paid therefor belonged to the wife; but the court, in that case, laid stress on the fact that no money or property of the husband had become united with the real estate which was the subject of controversy. It is true, there being a balance due as part of the purchase money, the husband had given a note for it, and he and his wife had executed a mortgage on the premises to secure its payment, but it was entirely unpaid, which the court considered an important fact in the case. Summers v. Hoover, 42 Ind. 153, was a case where the real estate was conveyed to the husband, but the consideration proceeded solely from the wife, and the deed was made to the husband without the wife’s consent, and the court intimated, in such a case, the deed to the wife would be valid; but it was clearly, as in the other case, on the ground that *185 neither money nor property of the husband had entered into the land which was the subject of controversy. In both these cases the property was conveyed to the wife hy the husband through a trustee. These are the only cases cited from the supreme court of Indiana which bear any analogy to the case now before the court. In Catherwood v. Watson, 65 Ind. 576, the supreme court merely decided that, where a tract of land was purchased hy the wife with her money, and a deed was taken in her husband’s name, there was no resulting trust in favor of the wife as against a judgment and execution creditor who levied on the land, and had no notice of the wife’s interest in the land. In Glidewell v. Spaugh, 26 Ind. 319, the court decided, where a conveyance of real estate was made to one person, and the consideration therefor proceeded from another, that no trust arose under the statute unless there was an agreement without fraud to hold the title for the use of the person paying the purchase money.
The district court, in each of the cases now under consideration, sustained the bill, and held that the conveyances respectively made to the wife were fraudulent as against the creditors of the bankrupts. From that decision an appeal was taken in each case by the wife, and by her husband. I think the decision of the district court was right in each case. The deeds were made to the wife in the fall of 1877, at a time when there can he no reasonable doubt that the firm of Stoner & Moyer was insolvent, as well as each member of the firm. Neithér can there be any doubt that these conveyances were respectively made for the purpose of preventing the property from coming into the hands of the creditors of Stoner & Moyer, and so were fraudulent in contemplation of law, unless the fact that some money of the wife entered into the property changed the principle. The supreme court of this state has sustained conveyances made to the wife where the whole consideration was paid by her, where no money or property of the husband became an integral part of the estate conveyed, and where the deed had been taken in the name of the husband; but this is as far as the supreme court has gone. It may be questionable, I think, where the wife has *186 permitted the real estate to remain for a long time in the name of her husband — has permitted him to exercise apparently the sole control over it, and treat it as his own, with all the indicia of ownership, for a series of years, thus holding himself out to the world as the owner of the property, and trading and doing business upon the faith of such ownership— whether we ought, on principle, to sustain a conveyance to the wife under such circumstances; but, however this may be as an abstract principle, if these cases were within the rule established by the supreme court, it would be the duty of this court to follow it as one of property in the state. But these cases now before the court are different from those cited in this: that in each there was a large share of the value of the property, the subject of controversy here, which had been contributed by the husband. In the one case he had purchased the property with his own means, and had merely made a gift to his wife many years before the conveyance was made to her; in the other she had advanced the purchase money out of her own estate, but he had contributed a large share to the value of the property; and in both cases the husband had exercised apparent ownership over the property for many years, traded on it and used it as his own, so far as we know, without any action on the part of the wife in hostility thereto. To allow the wife, under such circumstances as these, to retain the property, or even any part of it, as against creditors, would, it seems to me, be inequitable.
It is true that the law discriminates between the property of the husband and that of the wife, and allows the wife protection in her individual property; but we know how frequent it is for them, although there may be separate property in the wife, to consider it as common, and how often the wife allows the husband to treat her property as his own. A court of equity would go very far, even in such a case, to protect a wife in her individual rights; but it is hardly permissible for her to allow her husband for a series of years to treat the property as his own, and to incorporate a part of his own means in it, and then claim the whole of it as against the creditors of the husband. It is possible that, where the ques *187 tion came before a court of equity immediately after the fact, that it might feel inclined to separate that portion of the value of the property which belonged to the wife, and give her the benefit of it in some of the modes within the province of a court of equity; but where so much time has elapsed without action on the part of the wife, and the husband has been permitted for so long to treat property as his own, it would seem to be inequitable, as well as impracticable, to sever the interest of the wife from that of the husband.
For these reasons the decree of the district court in each case is affirmed, with costs.